# EXHIBIT A

*1.*

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

NORFOLK, ss.

KAMERINE NICKOLS,

      Plaintiff,

    vs.

SHARKNINJA OPERATING LLC,
SHARKNINJA MANAGEMENT COMPANY,
SHARKNINJA MANAGEMENT LLC,
SHARKNINJA MIDCO LLC and
SHARKNINJA SALES COMPANY,

      Defendants.

Civil Action No. 2582CV00553

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
2025 MAY 19 PH 12:47

### PLAINTIFF'S COMPLAINT AT LAW AND JURY DEMAND

Plaintiff, KAMERINE NICKOLS (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, MEYERS & FLOWERS, LLC, hereby submits the following Complaint and Demand for Jury Trial against Defendants, SHARKNINJA OPERATING LLC, SHARKNINJA MANAGEMENT COMPANY, SHARKNINJA MANAGEMENT LLC, SHARKNINJA MIDCO LLC and SHARKNINJA SALES COMPANY alleges the following upon personal knowledge and belief, and investigation of counsel:

### INTRODUCTION

1.     This is a product liability action seeking recovery for substantial personal injuries and damages suffered by Plaintiff after Plaintiff was seriously injured by a SharkNinja Foodi OP300 Series Multi-Function Pressure Cooker (hereafter generally referred to as "pressure cooker(s)" or "SharkNinja pressure cooker(s)).

## **PARTIES**

2.      Plaintiff was, at all relevant times, a resident of the City of Princeton, County of Collin, State of Texas.

3.      SHARKNINJA OPERATING LLC is a Massachusetts Limited Liability Corporation incorporated in the State of Delaware and has a principal place of business located at 89 A Street, Needham, Massachusetts 02494. Accordingly, they are a resident and citizen of the State of Massachusetts.

4.      SHARKNINJA MANAGEMENT COMPANY is a Massachusetts Limited Liability Corporation incorporated in the State of Delaware and has a principal place of business located at 89 A Street, Needham, Massachusetts 02494. Accordingly, they are a resident and citizen of the State of Massachusetts.

5.      SHARKNINJA MANAGEMENT LLC is a Massachusetts Limited Liability Corporation incorporated in the State of Delaware and has a principal place of business located at 89 A Street, Needham, Massachusetts 02494. Accordingly, they are a resident and citizen of the State of Massachusetts.

6.      SHARKNINJA MIDCO LLC is a Massachusetts Limited Liability Corporation incorporated in the State of Delaware and has a principal place of business located at 89 A Street, Needham, Massachusetts 02494. Accordingly, they are a resident and citizen of the State of Massachusetts.

7.      SHARKNINJA SALES COMPANY is a Massachusetts Limited Liability Corporation incorporated in the State of Delaware and has a principal place of business located at 89 A Street, Needham, Massachusetts 02494. Accordingly, they are a resident and citizen of the State of Massachusetts.

8. SHARKNINJA OPERATING LLC, SHARKNINJA MANAGEMENT COMPANY, SHARKNINJA MANAGEMENT LLC, SHARKNINJA MIDCO LLC and SHARKNINJA SALES COMPANY (collectively referred to herein as "Defendants" or "SharkNinja") are each involved and have control over the design, build, manufacture, marketing, promotion, importation, distribution and sale a variety of consumer products, including the subject pressure cookers.

## COMMON ALLEGATIONS

9. The product in question is a SharkNinja pressure cooker, designed, developed, manufactured, imported, marketed, warranted, promoted, distributed and sold by Defendants.

10. Defendants are engaged in the business of designing, building, manufacturing, marketing, warranting, marketing, promoting, importing, distributing and selling the SharkNinja pressure cookers at issue in this lawsuit.

11. Defendants claim, represent and warrant to consumers that they are "consumer-centric innovation driven by [a] relentless pursuit of perfection" that have over 800 engineers and designers working to solve consumer problems.

12. Defendants claim that they produce "innovative 5-star products that improve people's lives, every day".

13. Defendants claim, represent and warrant to consumers that their products, including the SharkNinja pressure cookers, "meet our quality standards for performance and durability" and claim to provide consumers with "5-star quality product experience[s]".

14. During ordinary use, SharkNinja pressure cookers generate extreme heat and seals steam inside, which creates pressure. With this high pressure, the internal temperature of the

3

SharkNinja pressure cooker is raised above the normal boiling point of water thus expediting the cooking process.

15.    Understanding this is how the SharkNinja pressure cookers work, Defendants had an obligation to ensure their products were safe, free from defect, and not unreasonably dangerous. As part of this obligation, Defendants had a duty to test the SharkNinja pressure cookers before putting them on the market, conduct ongoing testing while selling SharkNinja pressure cookers, properly and thoroughly investigate incident complaints including failure and root cause analyses and take prompt action to ensure the safety of consumers using the product.

16.    Included with the Pressure Cooker was an "Owner's Guide." (Hereinafter, "Owner's Manual").

17.    According to the Owner's Guide accompanying each SharkNinja pressure cooker unit sold, they purport to have various safety features misleading consumers into believing that the pressure cookers are reasonably safe for their normal, intended use.

18.    According to the SharkNinja pressure cooker Owner's Guide, Defendants claim, represent, warrant and assure consumers that:

    a.  "[W]hen steam is **completely released** the float valve will be in the lower position allowing the lid to be removed."

    b.  "When steam is **completely released**, the unit will be ready to open."

    c.  "As the unit pressurizes, the lid will lock as a safety measure, and it **will not unlock until pressure is released**."

    d.  "**NOTE**: The pressure lid **will not** unlock until the unit is **completely depressurized**."

e. "As a safety feature, the pressure lid **will not unlock** until the unit is **completely depressurized**."

f. "When the steam is **completely released**, the unit will be ready to open."

19. Representations and warranties like these mislead consumers into believing the SharkNinja pressure cookers are reasonably safe for their normal, intended use when in reality, they are capable of opening and being opened while still pressurized.

20. Despite this and in disregard of their obligations, Defendants were aware that the SharkNinja pressure cooker lids had defects that made them unsafe and unreasonably dangerous when used as intended.

21. Defendants formally recalled the SharkNinja pressure cookers in both the United States and Canada on May 1, 2025. In their recall, Defendants acknowledged the SharkNinja pressure cooker lids could open or be opened during use, causing hot contents to escape, posing a risk of burn injuries to consumers.

22. In their recall, Defendants acknowledged receiving "5 reports of lids being opened during use in Canada... and 106 reports of burn injuries" in the United States. Defendants indicated that of the 106 SharkNinja pressure cooker explosions in the United States, they were aware of "more than 50 reports of second- or third-degree burns to the face or body, with 26 lawsuits filed."

23. Plaintiff purchased the pressure cooker with the reasonable expectation that it was properly designed, manufactured, built, assembled, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

24. The SharkNinja pressure cooker at issue was designed, manufactured, built and assembled with a locking mechanism that was intended to secure the lid in place and prevent the SharkNinja pressure cooker from opening or being opened while there is any pressure inside.

5

25.    Defendants designed, manufactured, built, assembled, marketed, promoted, and sold the SharkNinja pressure cooker specifically for at-home use in consumer kitchens.

26.    The SharkNinja pressure cooker at issue in this case reached Plaintiff without substantial change in its condition and was stored and used in a reasonably foreseeable manner from its purchase through the date of explosion on or about September 24, 2023.

27.    On or about September 24, 2023, KAMERINE NICKOLS ("Plaintiff") used the SharkNinja pressure cooker to cook beef stew.

28.    Plaintiff placed the contents of her recipe into the SharkNinja pressure cooker.

29.    Plaintiff then closed the lid of the SharkNinja pressure cooker and used its electronic Control Panel to start the cooking cycle.

30.    After the cook cycle was complete and before attempting to open the lid, Plaintiff attempted to release all steam and pressure inside by turning the "Pressure Release Valve" to the "Vent" position.

31.    The Owner's Guide references the Pressure Valve as a way "to instantly release pressure through the valve."

32.    After Plaintiff did not observe any remaining steam venting from the Pressure Release Valve and did not hear any steam releasing, Plaintiff, following the instructions in the manual and Defendants' safety claims, considered the SharkNinja pressure cooker safe to open.

33.    Suddenly and without warning, the SharkNinja pressure cooker lid blew off and the scalding hot contents erupted all over Plaintiff, including her body, abdomen, legs, feet and arm causing serious burns.

34.    The proximate cause of Plaintiff's injuries was the defective, unsafe and negligent design, manufacture and assembly of the SharkNinja pressure cooker and the inadequate, deficient

and misleading safety statements, claims, warranties, representations and labeling associated with the SharkNinja pressure cookers, which, during reasonably anticipated use, allows the lid to open or be opened while sufficient pressure remains in the pot to cause the scalding hot contents to be expelled out and cause serious injury.

## COUNT I
## NEGLIGENT PRODUCTS LIABILITY - MANUFACTURING DEFECT

35.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

36.     At the time of Plaintiff's injuries, Defendants' SharkNinja pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

37.     Defendants' SharkNinja pressure cookers were in the same or substantially similar condition as when they left the possession of Defendants.

38.     Plaintiff did not misuse or materially alter the SharkNinja pressure cooker.

39.     The SharkNinja pressure cooker did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

40.     Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the SharkNinja pressure cookers safe. Specifically:

   a. The SharkNinja pressure cookers designed, manufactured, built, assembled, sold, marketed, promoted, advertised and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendants failed to properly market, promote, design, manufacture, build, assemble, distribute, supply, and sell the SharkNinja pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d.  Defendants failed to warn and place adequate warnings and instructions on the SharkNinja pressure cookers;

e.  Defendants failed to adequately test the SharkNinja pressure cookers;

f.  Defendants failed to undertake reasonable investigations, follow-up, testing, evaluation and analysis into why incidents involving the SharkNinja pressure cookers were occurring and promptly inform consumers; and

g.  Defendants failed to utilize and market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, which could have prevented the Plaintiff' injuries and damages.

41.  Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

**COUNT II**
**NEGLIGENT PRODUCTS LIABILITY - DESIGN DEFECT**

42.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

43.  Defendants are the designer, manufacturer, builder, assembler, marketer, promoter, warrantor, seller and supplier, and/or controlled all aspects of these processes related to the SharkNinja pressure cookers, which were negligently designed.

44.  Defendants failed to exercise reasonable care in designing, developing, building, assembling, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, warranting and promoting the SharkNinja pressure cookers, which were unsafe, defective and presented an unreasonable risk of harm to consumers, such as the Plaintiff.

45.  As a result, the SharkNinja pressure cookers, including the SharkNinja pressure cooker involved in the incident where Plaintiff was injured, contain defects in their design which

8

renders them unreasonably dangerous to consumers, such as the Plaintiff, when used as intended or as reasonably foreseeable to Defendants. The defects in the design allow the lid to open or be opened while the unit remains pressurized, despite the appearance that all the pressure has been released from the unit, and causes an unreasonable increased risk of injury, including, but not limited to, first, second and third-degree scald burns.

46. Plaintiff in this case used the SharkNinja pressure cooker in a reasonably foreseeable manner and did so as substantially intended by Defendants.

47. The SharkNinja pressure cooker at issue was not materially altered or modified after being designed, manufactured, assembled, built and sold by Defendants and before being used by Plaintiff.

48. The design defects allowing the lid to open or be removed while the unit was still pressurized directly rendered the SharkNinja pressure cookers unsafe, defective and were the direct and proximate result of Defendants' negligence and failure to use reasonable care in designing, developing, building, assembling, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, warranting and promoting the SharkNinja pressure cookers.

49. As a direct and proximate cause of Defendants' negligent design, development, building, assembly, manufacture, inspection, testing, packaging, sale, distribution, labeling, marketing, warranting and promotion of the SharkNinja pressure cookers, Plaintiff suffered injuries and damages described herein.

50. Despite the fact that Defendants knew of reports involving SharkNinja pressure cookers opening while pressurized before Plaintiff's incident, and despite the fact that Defendants should have known that the Plaintiff and consumers like her were able to remove the lid while the

SharkNinja pressure cookers were still pressurized, Defendants continued to market them as safe to the general public (and continued to do so until they were recalled on May 1, 2025).

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

**COUNT III**
**NEGLIGENT PRODUCTS LIABILITY - FAILURE TO WARN**

51.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

52.    At the time in which the SharkNinja pressure cooker was purchased, up through the time Plaintiff was injured, Defendants knew or had reason to know that the SharkNinja pressure cookers were dangerous and created an unreasonable risk of harm to consumers.

53.    Defendants had a duty to exercise reasonable care to warn consumers of the dangerous conditions or the facts that made the SharkNinja pressure cooker unsafe, unreasonably dangerous, defective or likely to be dangerous.

54.    At the time the SharkNinja pressure cooker left the possession of Defendants, it was defective, unsafe and unreasonably dangerous due to providing inadequate and inaccurate product warnings. These defects include but are not limited to the following:

   a. Failed to adequately inform users of the risks associated with using the SharkNinja pressure cooker;

   b. Failed to adequately inform users that the SharkNinja pressure cooker lid could open or be opened while the unit was pressurized;

   c. Failed to adequately inform users that the SharkNinja pressure cooker lid could open or be opened while the unit was pressurized causing the forcible expulsion of scalding hot contents out in all directions;

10

d.  Failed to inform users of objective ways in which users are to know no pressure remains inside the SharkNinja pressure cooker such that it is safe to open;

e.  Failed to adequately inform users inform users of the information necessary to understand and know how to safety use the SharkNinja pressure cooker and know when the lid can safely be removed;

f.  Failed to adequately inform users the dangers and risks, including the frequency or rate of injury, associated with the SharkNinja pressure cooker's design;

g.  Failed to adequately inform users of the SharkNinja pressure cooker about its lid locking mechanism being weaker, less effective and more prone to opening or capable of being opened causing injuries compared to alternative designs;

h.  Failed to adequately inform users of other incidents happening with the SharkNinja pressure cooker opening or being opened while pressurized causing serious injuries;

i.  Misled users of the SharkNinja pressure cookers regarding the product's safety including the alleged inability to open while pressurized when such a representation is inaccurate and contrary to Defendants' knowledge; and

j.  Failed to updated and appropriately warn users about the known dangers (and those that were knowable had adequate testing and investigation been performed) associated with the SharkNinja pressure cookers opening while pressurized.

55.  As a direct and proximate cause of Defendants' negligent failure to warn of the dangers of the SharkNinja pressure cookers, Plaintiff suffered injuries and damages described herein.

56.  Despite the fact that Defendants knew of reports involving SharkNinja pressure cookers opening while pressurized before Plaintiff's incident, and despite the fact that Defendants should have known that the Plaintiff and consumers like her were able to remove the lid while the SharkNinja pressure cookers were still pressurized, Defendants continued to market them as safe to the general public (and continued to do so until they were recalled on May 1, 2025).

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

11

## COUNT IV
## NEGLIGENCE

57.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

58.    Defendants had a duty of reasonable care to design, manufacture, assemble, build, market, promote, advertise, sell and distribute non-defective SharkNinja pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff.

59.    Defendants failed to exercise ordinary care in the manufacture, assembly, build, marketing, promotion, advertising, sale, warnings, quality assurance, quality control, testing, incident investigation and analysis, and distribution of the SharkNinja pressure cookers in that Defendants knew or should have known that the SharkNinja pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

60.    Defendants were negligent with respect to the SharkNinja pressure cookers in that, among other things, they:

 a.    Failed to use due care in the manufacture, assembly, build, marketing, promotion, advertising, sale, warnings, quality assurance, quality control, testing, incident investigation and analysis, and distribution of the SharkNinja pressure cookers to avoid the aforementioned risks to individuals;

 b.    Placed a dangerous, defective, unsafe and unreasonably dangerous product into the stream of commerce;

 c.    Aggressively marketed the SharkNinja pressure cookers through social media, television, internet and other advertising outlets without sharing the dangers and risks associated with the SharkNinja pressure cookers' design;

 d.    Failed to properly market, promote, design, manufacture, build, assemble, distribute, supply, and sell the SharkNinja pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

 e.    Failed to warn and place adequate warnings and instructions on the SharkNinja pressure cookers;

 f.    Failed to adequately test the SharkNinja pressure cookers;

12

g. Failed to undertake reasonable investigations, follow-up, testing, evaluation and analysis into why incidents involving the SharkNinja pressure cookers were occurring and promptly inform consumers; and

h. Failed to utilize and market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, which could have prevented the Plaintiff' injuries and damages;

i. Failed to adequately inform users of the risks associated with using the SharkNinja pressure cooker;

j. Failed to adequately inform users that the SharkNinja pressure cooker lid could open or be opened while the unit was pressurized;

k. Failed to adequately inform users that the SharkNinja pressure cooker lid could open or be opened while the unit was pressurized causing the forcible expulsion of scalding hot contents out in all directions;

l. Failed to inform users of objective ways in which users are to know no pressure remains inside the SharkNinja pressure cooker such that it is safe to open;

m. Failed to adequately inform users inform users of the information necessary to understand and know how to safety use the SharkNinja pressure cooker and know when the lid can safely be removed;

n. Failed to adequately inform users the dangers and risks, including the frequency or rate of injury, associated with the SharkNinja pressure cooker's design;

o. Failed to adequately inform users of the SharkNinja pressure cooker about its lid locking mechanism being weaker, less effective and more prone to opening or capable of being opened causing injuries compared to alternative designs;

p. Failed to adequately inform users of other incidents happening with the SharkNinja pressure cooker opening or being opened while pressurized causing serious injuries;

q. Misled users of the SharkNinja pressure cookers regarding the product's safety including the alleged inability to open while pressurized when such a representation is inaccurate and contrary to Defendants' knowledge; and

r. Failed to updated and appropriately warn users about the known dangers (and those that were knowable had adequate testing and investigation been performed) associated with the SharkNinja pressure cookers opening while pressurized;

s. Failed to promptly and appropriately recall the SharkNinja pressure cookers and/or stop sales until the problem, defect or root cause of the incidents was identified and could be properly addressed; and

t.    Were otherwise careless or negligent.

61.    Despite the fact that Defendants knew of reports involving SharkNinja pressure cookers opening while pressurized before Plaintiff's incident, and despite the fact that Defendants should have known that the Plaintiff and consumers like her were able to remove the lid while the SharkNinja pressure cookers were still pressurized, Defendants continued to market them as safe to the general public (and continued to do so until they were recalled on May 1, 2025).

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## COUNT V
## BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

62.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

63.    Defendants designed, manufactured, built, assembled, marketed, promoted, advertised, warranted, supplied, distributed and sold SharkNinja pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

64.    Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

65.    Defendants' SharkNinja pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use, including the ability of the lid to open or be opened while pressurized.

14

66.     Plaintiff in this case reasonably relied on Defendants' representations and warranties that the SharkNinja pressure cookers were a quick, effective and safe means of cooking that had a lid that would not come off and was incapable of being removed if pressure was inside. Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## COUNT VI
## BREACH OF WARRANTY OF MERCHANTABILITY

67.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

68.     At the time Defendants designed, manufactured, built, assembled, marketed, promoted, advertised, warranted, supplied, distributed and sold SharkNinja pressure cookers to Plaintiff, Defendants warranted that the SharkNinja pressure cooker was merchantable and fit for the ordinary purposes for which they were intended.

69.     Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

70.     Defendants SharkNinja pressure cookers were not merchantable and fit for their ordinary purpose, because they had the propensity to open or be capable of being opened while pressurized leading to the serious personal injuries as described herein in this Complaint.

71.     Plaintiff purchased the SharkNinja pressure cooker with the reasonable expectation that it was properly designed, built, assembled and manufactured, free from defects of any kind,and that it were safe for its intended, foreseeable use of cooking. Based on Defendants' warranties,

15

Plaintiff reasonably believed and expected that the SharkNinja pressure cooker lid would not open and would be incapable of being opened with pressure inside.

72.     Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## INJURIES & DAMAGES

73.     As a direct and proximate cause of Defendants' negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future pain and suffering as a result of the incident on or about September 24, 2023. Plaintiff is entitled to recover damages from Defendants for these injuries in an amount which shall be proven at trial.

74.     As a direct and proximate result of Defendants' negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident on or about September 24, 2023. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendants in an amount to be proven at trial.

75.     As a direct and proximate cause of Defendants' negligence and wrongful misconduct, as set forth herein, Plaintiff has and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the severe burns she suffered as a result of the incident on or about September 24, 2023. Plaintiff is entitled to recover damages from

16

Defendants for her past, present and future medical and other expenses in an amount which shall be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a.  That Plaintiff has a trial by jury on all of the claims and issues;

b.  That judgment be entered in favor of the Plaintiff and against Defendants on all of the aforementioned claims and issues;

c.  That Plaintiff recover all damages against Defendants, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for her injuries and suffering sustained because of the use of the Defendants' defective SharkNinja pressure cooker;

d.  That all costs be taxed against Defendants;

e.  That prejudgment interest be awarded according to proof;

f.  That Plaintiff be awarded attorney's fees to the extent permissible under Massachusetts law; and

g.  That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

PLAINTIFF,

By Her Attorneys,                                                           *Pro Hac Pending*

SUGARMAN AND SUGARMAN, P.C.                           MEYERS & FLOWERS, LLC

_____                           _____
Benjamin R. Zimmermann, Esq. – BBO# 643920          Peter J. Flowers, Esq. (FIRM No. 56079)
bzimmermann@sugarman.com                                      Frank V. Cesarone, Esq.
Stacey L. Pietrowicz, Esq.—BBO #672395                    Meyers & Flowers, LLC
spietrowicz@sugarman.com                                          3 N. Second Street, Suite 300
31 St. James Avenue, 10th Floor                                   St. Charles, IL 60174
Boston, MA 02116                                                        Phone: (630) 232-6333
(617) 542-1000                                                            Fax: (630) 845-8982
                                                                                Email: fvc@meyers-flowers.com

17

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2582CV00553 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Kamerine Nickols

**ADDRESS:** Princeton, Texas

**COUNTY** Norfolk

**DEFENDANT(S):** SharkNinja Operating LLC, SharkNinja Management Company, SharkNinja Management LLC, SharkNinja Midco LLC and SharkNinja Sales Company

**ATTORNEY:** Benjamin R Zimmermann and Pete J. Flowers (Pro Hac Pending)

**ADDRESS:** 31 St. James Ave, 10th Floor, Boston, MA 02116

3 N. Second St, Suite 300, St. Charles, IL 60174

**ADDRESS:** 89 A Street, Needham, Massachusetts 02494

**BBO:** 643920

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B05 | Product Liability | A | ☒ YES  ☐ NO |

*If "Other" please describe:

**Is there a claim under G.L. c. 93A?**
☐ YES  ☒ NO

**Is this a class action under Mass. R. Civ. P. 23?**
☐ YES  ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ................................................................................... $ 50,000+
  2. Total doctor expenses ...................................................................................... $
  3. Total chiropractic expenses ............................................................................ $
  4. Total physical therapy expenses .................................................................... $
  5. Total other expenses (describe below) .......................................................... $
                                                          Subtotal (A): $ 50,000+
B. Documented lost wages and compensation to date ...................................... $
C. Documented property damages to date ........................................................ $
D. Reasonably anticipated future medical and hospital expenses ................... $ 100,000+
E. Reasonably anticipated lost wages ................................................................ $
F. Other documented items of damages (describe below) ................................ $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Defective pressure cooker explosion (model subsequently recalled) injury 21 year old female (who is now 23). She suffered 2nd and 3rd degree burns to 15-20% of her body (abdomen, bilateral legs, arm, hand, foot, and toes. Had hospitalizations and follow-up including wound cleanings, infection treatment, wound debridement. Has permanent scarring and disfigurement to aforementioned areas totaling approximately 15-20% of the body.

**TOTAL (A-F):** $ 150,000+

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

**TOTAL:** $

**Signature of Attorney/ Unrepresented Plaintiff:** X

**Date:** May 19, 2025

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X                          **Date:** May 19, 2025

Date Filed 5/20/2025 3:16 PM
Superior Court - Norfolk
Docket Number 2582CV00553

Docketed 5/23/25

3

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT

KAMERINE NICKOLS,

    Plaintiff,

v.

SHARKNINJA OPERATING LLC,
SHARKNINJA MANAGEMENT
COMPANY, SHARKNINJA
MANAGEMENT LLC, SHARKNINJA
MIDCO LLC, AND SHARKNINJA
SALES COMPANY,

    Defendants.

2582CV00553

## PLAINTIFF'S MOTION TO APPOINT SPECIAL PROCESS SERVER PURSUANT TO MASS. R. CIV. P. 4(C)

Pursuant to Mass. R. Civ. P. 4(c), the plaintiff, Kamerine Nickols, moves that this Court appoint a Special Process Server, Dewsnap & Associates, LLC, 92 State St. - 8th Floor, Boston, MA 02109 (and/or an agent, servant or employee of Dewsnap & Associates), for the purpose of perfecting service of process upon the defendants, SharkNinja Operating LLC, SharkNinja Management Company, SharkNinja Management LLC, SharkNinja Midco LLC, and SharkNinja Sales Company. The constable to be appointed is a disinterested person over the age of eighteen.

As grounds for this motion, the plaintiff states that she desires more expedient service upon the defendants than can be accomplished through the use of the sheriff or other means.

Date Filed 5/20/2025 3:16 PM
Superior Court - Norfolk
Docket Number 2582CV00553

PLAINTIFF,

By Her Attorneys,

SUGARMAN AND SUGARMAN, P.C.

Benjamin R. Zimmermann, Esq. – BBO# 643920
bzimmermann@sugarman.com
31 St. James Avenue, 10th Floor
Boston, MA 02116
(617) 542-1000

DATED: May 20, 2025

2